E-FILED
Tuesday, 02 August, 2016 02:46:34 PM
Clerk, U.S. District Court, ILCD

AUG -1 2016

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF ILLINOIS

DAVID M. GILL, DAWN MOZINGO, DEBRA KUNKEL,    )
LINDA R. GREEN, DON NECESSARY and GREG PARSONS )
                                              )
        Plaintiffs,                           )
                                              )
v.                                            )    No. 16-3221
                                              )
CHARLES W. SCHOLZ, sued in his official capacities as the )
Chairman of the Illinois State Board of Elections )
and of the State Officers Electoral Board,    )
ERNEST L. GOWEN, sued in his official capacities )
as Vice-Chairman of the Illinois State Board of Elections )
and Member of the State Officers Electoral Board, )
BETTY J. COFFRIN, CASSANDRA B. WATSON,        )
WILLIAM M. McGUFFAGE, JOHN R. KEITH,          )
ANDREW K.CARRUTHERS, and WILLIAM J. CADIGAN,  )
sued in their official capacities as Members of the Illinois )
State Board of Elections and Members of the   )
State Officers Electoral Board, and STEVE SANDVOSS, )
sued in his official capacity                 )
as the Executive Director, Illinois State Board of Elections, )
                                              )
        Defendants.                           )

COMPLAINT FOR DECLARATORY JUDGMENT AND
PRELIMINARY AND PERMANENT INJUNCTION

Now come the Plaintiffs, David M. Gill ("Plaintiff Candidate"), Dawn Mozingo, Debra

Kunkel, Linda Green, Don Necessary, and Greg Parsons by and through their attorney, Samuel J.

Cahnman, and for their complaint at law against the Defendants Charles W. Scholz, in his official

capacities as the Chairman of the Illinois State Board of Elections ("ISBE") and Chairman of the

State Officers Electoral Board (SOEB); Ernest L. Gowen, in his official capacities as the Vice-

Chairman of the ISBE and a Member of the SOEB; Betty J. Coffrin, Cassandra B. Watson, William

M. McGuffage, John R. Keith, Andrew H. Carruthers, and William J. Cadigan, in their capacities

1

as Members of the ISBE and Members of the SOEB; and Steve Sandvoss, in his official capacity as the Executive Director of the ISBE (collectively "Defendants"), state as follows:

JURISDICTION & VENUE

1.　This Complaint is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First and Fourteenth Amendments to the United States Constitution.　Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) and the aforementioned statutory and constitutional provisions.　Venue in this Court exists and is proper pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2), in that one or more Defendants reside within this District and a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred within the Central District of Illinois.

PARTIES

2.　Plaintiff, Candidate David M. Gill, is a resident of Bloomington, McClean County, Illinois.　He filed petitions to be an independent candidate for election to the office of Representative in the United States House of Representatives for the 13th District of Illinois for the General Election to be held on November 8, 2016 pursuant to the election Code 10 ILCS 5/1-1 *et seq.*

3.　Plaintiff, Dawn Mozingo, resides within Illinois' 13th Congressional District, in Farmer City, DeWitt County, Illinois.　She is a registered voter in the 13th Congressional District, she circulated and signed David M. Gill's petition, and desires to vote for David M. Gill to be her Representative in the U. S. House of Representatives in the General Election to be held on November 8, 2016.

4.　Plaintiff Debra Kunkel resides within Illinois' 13th Congressional District, in Springfield, Sangamon County, Illinois.　She is a registered voter in the 13th Congressional

2

District, signed David M. Gill's petition and desires to vote for David M. Gill to be her Representative in the U.S. House of Representatives in the General Election to be held on November 8, 2016.

5.  Plaintiff, Linda R. Green, resides within Illinois' 13th Congressional District, in Morrisonville, Christian County.  She is a registered voter in the 13th Congressional District, circulated and signed David M. Gill's petition and desires to vote for David M. Gill to be her Representative in the U.S. House of Representatives in the General Election to be held on November 8, 2016.

6.  Plaintiff, Don Necessary, resides within Illinois' 13th Congressional District, in Bloomington, McClean County, Illinois.  He is a registered voter in the 13th Congressional District, circulated and signed David M. Gill's petition and desires to vote for David M. Gill to be his Representative in the U. S. House of Representatives in the General Election to be held on November 8, 2016.

7.  Plaintiff, Greg Parsons, resides within the 13th Congressional District in Decatur, Macon County, Illinois.  He is a registered voter in Illinois' 13th Congressional District, and desires to vote for David M. Gill to be his Representative in the U. S. House of Representatives in the General Election to be held on November 8, 2016.

8.  Defendant Charles W. Scholz is an appointed member of the Illinois State Board of Elections (hereafter "ISBE"), a state agency, and its Chairman, in which capacity he acts under color of state law to administer and enforce the provisions of Illinois's Election Code, pursuant to Sections 1A-6 and 1A-8, 10 ILCS 5/1A-6, 1A-8, and other provisions of the Election Code.

9.  Defendant Ernest L. Gowen, is an appointed member of the ISBE, a state agency, and its Vice-Chairman, in which capacity he acts under color of state law to administer and enforce

3

the provisions of the Election Code, pursuant to Sections 1A-6 and 1A-8, 10 ILCS 5/1A-6, 1A-8, and other provisions of the Election Code.

10.    Defendants, Betty J. Coffrin, Cassandra B. Watson, William F. McGuffage, John R. Keith, Andrew K. Carruthers and William J. Cadigan are each currently appointed members of the ISBE, in which capacity each acts under color of state law to administer and enforce the provisions of the Election Code, pursuant to 10 ILCS 5/1A-6, 10 ILCS 5/1A-8 and other provisions of the Election Code.

11.    Defendants Scholz, Gowen, Coffrin, McGuffage, Keith, Carruthers and Cadigan together meet and perform the functions of the ISBE (see Ill. Const. 1970, Art. III, § 5), which maintains offices in Springfield and Chicago.

12.    Defendant Steve Sandross is the Executive Director of the ISBE, in which capacity he acts under color of state law to administer, enforce, and execute the provisions of the Election Code, pursuant to Section 1A-9, 10 ILCS 5/1A-9, and other provisions of the Election Code.1

13.    When an objection to nomination papers is filed pursuant to Section 10-8 of the Election Code, 10 ILCS 5/10-8, Defendants Scholz, Gowen, Coffrin, Watson, McGuffage, Keith, Carruthers, and Cadigan then constitute and meet as the State Officers Electoral Board, pursuant to Section 10-9, 10 ILCS 5/10-9. The SOEB convenes its meetings simultaneously at two locations–Springfield and Chicago, via audio and video conferencing equipment.

14.    Pursuant to Section 10-9(1) of the Election Code, 10 ILCS 5/10-9(1), the SOEB is the electoral board designated to hear and pass upon objections to the nominations of candidates for State office and Congressional office of districts situated in more than one county, such as the 13th Congressional District.

FACTUAL ALLEGATIONS

4

15.    Section 10-3 of the Election Code provides that nominations of independent candidates for public office within any district less than the State, may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district, equaling not less than 5% , nor more than 8% of the number of persons, who voted at the next preceding regular election in such district in which such district voted as a unit for the election of officers to serve its respective territorial area.

16.    According to the State of Illinois Candidate's Guide 2016, issued by the ISBE (as amended February 8, 2016)[1], Plaintiff Candidate Gill was required to file a minimum of 10,754 signatures to be an independent candidate for U.S. Congress from the 13th District. (Relevant pages of Candidate's Guide 2016 are attached hereto as Exhibit "A".)

17.    Section 10-4 of the Election Code requires that all signatures on the candidate's nominating petition sheets must be collected during the "90 days preceding the last day for the filing of the petition."   10 ILCS 5/10-4.

18.    Section 10-6 of the Election Code requires that the nominating petition be filed at the ISBE's principal office (Springfield) "not more than 141 nor less than 134 days previous to the day of election."   10 ILCS 5/10-6.

19.    Specifically, under Sections 10-4 and 10-6 of the Election Code, this meant that the Plaintiff Candidate Gill was required to gather signatures from Illinois registered voters during the 90-day period beginning March, 29 2016, and ending June 27, 2016.[2]

20.    On June 27, 2016, Plaintiff Candidate Gill timely filed, at the ISBE office in

_____

[1]. http://www.elections.il.gov/Downloads/ElectionInformation/PDF/2016CanGuide.pdf

[2] June 23, 2016, is 134 days before the 2016 General Election, which is to be held November 8, 2016.

5

Springfield, Illinois, a Statement of Candidacy as an independent candidate for Illinois's 13th Congressional District for the General Election to be held November 8, 2016, in accordance with Section 10-5 of the Election Code, 10 ILCS 5/10-5.

21.    In keeping with the requirements of Section 10-3 of the Election Code, 10 ICLS 5/10-3, Plaintiff Candidate Gill's Statement of Candidacy was also accompanied by a nominating petition containing the signatures and addresses of about 11,350 persons representing themselves to be Illinois registered voters, of the 13th Congressional District of Illinois, and petitioning for David M. Gill to be an independent candidate for Congress from the 13th Congressional District for the November 8, 2016 General Election.

22.    Under Section 10-8 of the Election Code, 10 ILCS 5/10-8, the timely filed nominating papers of candidates for public office are deemed valid if they are in apparent conformity with the requirements of the Election Code, unless an objection is filed within five business days of the last day for filing the nominating papers.

23.    On July 5, 2016, Jerrold Stocks, of Mt. Zion, filed his Objector's Petition against the nomination of Plaintiff Candidate Gill for Illinois' 13th Congressional District and the case was docketed as Stocks v. Gill, No. 16- SOEB-GE-109.

24.    On July 22, 2016, David Herman, Hearing Examiner for the SOEB, issued his recommendation in Stocks v. Gill, No. 16-SOEB-GE-109, finding that the record examination concluded Plaintiff Candidate Gill had 8,593 valid signatures.  Since this was less than the statutorily required number of 10,754, Herman recommended that Candidate Gill's name not be on the General Election ballot. (A copy of said Recommendation is attached hereto as Exhibit "B".

25.    The SOEB has scheduled a hearing on August 26, 2016, to act on the Hearing

Examiner's recommendations.[3]

**COUNT I**

**THE NOTARIZATION REQUIREMENT FOR PETITION CIRCULATORS
VIOLATES THE U.S. CONSTITUTION'S FIRST AMENDMENT &
FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE**

26.   The Plaintiffs restate and incorporate each of the foregoing paragraphs as if fully stated herein.

27.   Section 10-4 of the Election Code, in describing the form of petition for nomination to be used by independent candidates for public office, provides, in pertinent part as follows:

"At the bottom of each sheet of such petition shall be added a circulator's statement, signed by a person 18 years of age or older who is a citizen of the United States; stating the street address or rural route number, as the case may be, as well as the county, city, village or town, and state; certifying that the signatures on that sheet of the petition were signed in his or her presence; certifying that the signatures are genuine; and either (1) indicating the dates on which that sheet was circulated, or (2) indicating the first and last dates on which the sheet was circulated, or (3) certifying that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition; and certifying that to the best of his knowledge and belief the persons so signing were at the time of signing the petition duly registered voters under Articles 4, 5 or 6 of the Code of the political subdivision or district for which the candidate or candidates shall be nominated, and certifying that their respective residences are correctly stated therein. *Such statement shall be sworn to before some officer authorized to administer oaths in this State.*"

---

[3] August 22, 2016, is the date set for the ISBE's certification of the General Election ballot to the county election authorities.   http://www.elections.il.gov/CalendarEventsPage.aspx?Date=8/26/2016

(Emphasis added.)  10 ILCS 5/10-4.

28.  Thus, in addition to the requirement that an independent for Representative in the U.S. House of Representatives gather a minimum number of signatures from registered voters in a 90-day window, Section 10-4 of the Election Code requires that each petition circulator fill out certain identifying and other information at the bottom of each sheet and also appear before a person authorized to administer oaths, known as a notary public, and sign each individual sheet in front of the notary, in order to satisfy the Election Code.

29.  In the event that an objector's petition challenges the validity of petition signatures filed by a candidate, the SOEB has staff members compare the petition sheets to the ISBE's electronically stored voter registration records and images of signatures obtained from various election authorities throughout the State, in order to determine whether each objection should be sustained or overruled.  The SOEB uses this process to decide the validity of each challenged signature line.

30.  Because of this verification process performed by the SOEB, no State interest, or alternatively no compelling State interest, is served by this *a priori* notarization requirement imposed on each circulator of a petition sheet gathered to satisfy the minimum-signature threshold imposed on independent candidates for Congress.

31.  Illinois law provides an alternative to the notarization requirement through its Code of Civil Procedure, 735 ILCS 5/1-109, whereby an individual may "certify" to the truth of factual allegations under penalty of perjury, in lieu of a sworn statement before a person authorized to administer oaths (*i.e.*, a notary public).

32.  Given that this verification by certification under Illinois's Code of Civil Procedure has been deemed adequate for the purpose of authenticating all manner of court pleadings, there is

no rational basis for the State to impose an even higher threshold of authentication on circulators gathering petition signatures from persons asserting that they are registered to vote in Illinois.

33.    While the State's interest in the notarization requirement is nonexistent or *de minimis*, the requirement places a severe burden on the Plaintiff Candidate, on other voters having an interest in seeing the Plaintiff Candidate appear on the ballot, like the other Plaintiffs in this case, and on others similarly situated.

34.    Notaries are not always available at times when circulators have an opportunity to seek their services.

35.    Even when notaries are available, financial institutions and other places of business often charge for each notarization service.

36.    This means that time and sometimes travel and other expenses will be incurred in the effort to get each sheet notarized.

37.    Circulators who gather more than a few sheets, especially, may need to make repeat trips to get their sheets notarized.

38.    The notary requirement necessitates one extra significant step for every petition sheet to be filed, requiring the circulator to make physical contact with an additional person, a notary.

39.    The additional time necessary to accomplish the notarizing takes away from time that could otherwise be spent petitioning.

40.    The notarization requirement negatively impacted the Plaintiff Candidate's ability to gather the minimum number of signatures required for by the Election Code.

41.    Although the petition signatures gathered by candidates of established party candidates for Congress are also subject to the same circulator notarization requirement, pursuant to Section 7-10 of the Election Code, 10 ILCS 5/7-10, the impact on the independent candidates

and those of so-called "new" parties is disproportionately greater, considering that "established" party candidates for Congress in the 13th District are required to gather only 739 signatures for Republicans and 733 for Democrats from qualified primary electors of the candidate's party in order to secure a place on the primary ballot, 10 ILCS 5/7-10(a), and the State makes available the identity and addresses of the party's qualified primary electors.

42. For the 13th Congressional District, the 739 signatures required for an established party candidate to get on the 2016 Primary Election ballot represented 0.35% of the number of votes cast (210,272) in the 2014 General Election for that seat.

43. The signature-gathering requirement for independent and new party candidates for Congress from the 13th District, almost fifteen times the number required of established parties, is magnified further by the burden of notarizing each and every sheet that is to be filed.

44. Accordingly, the notarization requirement in Section 10-4 of the Election Code quoted above, on its face and as applied, discriminates against the Plaintiff Candidate, by imposing a disproportionate and undue burden on him in contrast to that imposed on the candidates of "established" political parties.

45. The notarization requirement in Section 10-4 of the Election Code, on its face and as applied, also interferes with the rights of other Illinois voters, such as Plaintiffs Dawn Mozingo, Debra Kunkel, Linda Green, Don Necessary, and Greg Parsons to associate and effectively advocate for the Plaintiff Candidate, and vote for the Plaintiff Candidate.

46. The notarization requirement in Section 10-4 of the Election Code, on its face and as applied, therefore violates the Plaintiffs' rights to Free Speech and Freedom of Association guaranteed by the First Amendment to the United States Constitution, incorporated and made applicable to the State of Illinois by operation of the Fourteenth Amendment to the United States

Constitution.

47.   The notarization requirement in Section 10-4 of the Election Code, on its face and as applied, violates the Plaintiffs' right to Due Process and Equal Protection under the law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

48.   Defendants and their employees have exercised and will continue to exercise their authority under color of State law to enforce the notarization provision of the Election Code quoted above, both facially and as applied to the Plaintiffs, for the November 8, 2016, General Election in such a manner as to be in violation of the First and Fourteenth Amendments to the United States Constitution.0

WHEREFORE, the Plaintiffs respectfully request that this Court:

A.   Issue a declaration that the Section 10-4 notarization requirement, both facially and as applied to the Plaintiffs, is unconstitutional, being inconsistent with the First and Fourteenth Amendments to the United States Constitution;

B.   Find that the notarization requirement negatively impacted the Plaintiff Candidate's ability to gather and file the minimum number of signatures called for by the Election Code;

C.   Enter a preliminary injunction and permanent order enjoining Defendants from enforcing the Section 10-4 notarization requirement as applied to the Plaintiff Candidate Gill and enjoining Defendants to direct that the name of Plaintiff Candidate be printed upon the November 8, 2016, General Election ballot, or in the alternative, afford the Plaintiff Candidate Gill additional time in which to gather petition signatures from registered voters, in compensation for the undue burden imposed by the notarization requirement;

D.   Award the Plaintiffs the reasonable costs and expenses of this action, including attorneys' fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. §1988; and

D.   Award such other and further relief as this Court deems just and equitable.

**COUNT II (13th Congressional District)**

**THE 5%-MINIMUM-SIGNATURE REQUIREMENT AS APPLIED TO THE 13TH CONGRESSIONAL DISTRICT VIOLATES PLAINTIFFS' RIGHTS UNDER THE U.S. CONSTITUTION'S FIRST AMENDMENT & FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE**

49.   Plaintiffs restate and incorporate the above paragraphs as if fully stated herein.

50.   Section 10-3 of the Election Code sets out the 5%-minimum-signature requirement for a nominating petition for an independent candidate for the U.S. House, like Plaintiff Candidate Gill:

"Nominations of independent candidates for public office within any district...less than the State, may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district..., equaling not less than 5% nor more than 8%...of the number of persons who voted at the next preceding regular election in such district...in which such district...voted as a unit for the election of officers to serve its respective territorial area."   10 ILCS 5/10-3.

51.   The 5%-minimum-signature requirement applies to all independent candidates for the U.S. House of Representatives, regardless of the differing natures of the various Congressional Districts.

52.   The 13th Congressional District is a rural, geographically large district, stretching

12

from the Champaign-Urbana and Bloomington-Normal areas to the St. Louis Metro-East area.

53.   For the Plaintiff Candidate to travel through the 13th Congressional District by road from his home in Bloomington to Golden Eagle, in Calhoun County, near St. Louis, he would need to travel about 183 miles.

54.   The 13th Congressional District covers 5,794 square miles and is the fourth largest Congressional District by area in Illinois. By contrast, Chicago area Congressional Districts are as small as 52 square miles (CD 4); 96 square miles (CD 5); and 125 square miles (CD 3).

55.   Three of the major cities (Springfield, Bloomington and Normal), and five of the counties (Bond, Champaign, Madison, McLean and Sangamon) have been divided by the Illinois General Assembly so that part or most of each of them lies outside of the 13th Congressional district.

56.   Gathering signatures in this rural, geographically large District with few population centers was more difficult for several reasons: (a) additional time was needed for travel between petition-gathering attempts, (b) additional time was needed to engage potential signers, and (c) events with large crowds were relatively scarce, especially during the early days of the 90-day petitioning period, during which the weather was harsher.

57.   In addition, gathering signatures in cities, counties and other population centers divided between two Congressional Districts was especially difficult for several reasons: (a) circulators and voters were confused about which district the voter lived in (b) additional time was necessary to determine the correct district in which the voter's residence was located, and (c) at larger events, even attendees residing in certain cities and counties did not all reside in the same Congressional District, thereby further reducing the pool of potential signers.

58.   As a result of this rural, geographically large nature of the 13th Congressional

13

District, the General Assembly's drawing of the district boundaries through three of the cities and five of the counties in the District, and all the circumstances described herein, the State has imposed a disproportionate and severe burden on Plaintiffs to gather the statutory 5% minimum number of signatures for Plaintiff Candidate Gill's nominating petition.

The foregoing facts describe the State's severe and overly burdensome restrictions on ballot access, which result in a violation of Plaintiffs' constitutional rights.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.  Issue a declaration that the 5%-minimum-signature requirement of the Election Code, both facially and as applied, or alternatively only as applied, is unconstitutional, being inconsistent with the First and Fourteenth Amendments to the United States Constitution;

B.  Enter a preliminary injunction and permanent order enjoining Defendants from enforcing the 5%-minimum-signature requirement of the Election Code, as applied to Plaintiff Candidate Gill's nominating petition, and enjoining Defendants to direct that the name of Plaintiff David M. Gill, as an independent candidate for Illinois' 13th Congressional District, be printed upon the November 8, 2016, General Election ballot;

C.  Award the Plaintiffs the reasonable costs and expenses of this action, including attorney fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. §1988; and

D.  Award such other and further relief as this Court deems just and equitable.

## COUNT III

## THE 5%-MINIMUM-SIGNATURE REQUIREMENT VIOLATES PLAINTIFFS' RIGHTS UNDER THE U.S. CONSTITUTION'S FIRST AMENDMENT & FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

59. Plaintiffs restate and incorporate the above paragraphs as if fully stated herein.

60. The 5% minimum signature requirement bears no rational relationship to other signature requirements and violates equal protection for the following reasons:

61. The signature requirement for an independent candidate for the U.S. House of Representatives in the 13th Congressional District is 10,754; and the signature requirement for a Republican candidate is 739 and for a Democrat is 733, an average of 736 for established party candidates.

62. Thus, the independent candidate must obtain 14.61 times more signatures than the established party candidate.

63. Section 7-10 of the Election Code provides that an established party candidate for U.S. Senator must get 5,000 signatures 10 ILCS 5/7-10(a).

64. Section 10-3 of the Election Code provides that an independent candidate for the U.S. Senator must get 25,000 signatures. 10 ILCS 5/10-3. Candidate's Guide 2016 (See Exhibit "A" attached hereto.)

65. Thus, for the U.S. Senate an independent candidate must get only five times more signatures than established party candidates (whereas for the U.S. House an independent candidate must get 14.61 times more signatures than established party candidates).

66. There is no rational relationship to proportionally require three times more signatures for an independent U.S. Representative candidate than an independent U.S. Senator candidate (compared to requirement for established party candidates for the same office), when a U.S. Representative holds much less power (1 of 435 vs. 1 of 100); serves one-third as many years (2

years vs. 6 years), and represents 1/18 as many people (18 Congressional Districts in Illinois).

67.   The 25,000 signature requirement for an independent candidate for the U.S. Senator constitutes 0.694% of the number of persons who voted at the next preceding regular General Election for U.S. Senator in 2014, said number being 3,603,475.

68.   If Plaintiff Candidate had the same 0.694% of the last regular General election vote requirement as independent U.S. Senate candidates have, his signature requirement would have been 1,460 (0.694% of 210,272), far below the 8,593 valid signatures the SOEB Hearing Examiner found Plaintiff Candidate had filed.

69.   There is no rational relationship to having a more than 7 times greater signature requirement for the U.S. House than the U.S. Senate (5% vs. 0.694%) when a U.S. Representative holds much less power than a U. S. Senator (1 of 435 vs. 1 of 100); serves one-third as many years (2 vs. 6); and represents 1/18 as many people (18 Congressional Districts in Illinois).

70.   Illinois' massive signature requirement violates equal protection when compared with other states in that:

a.    only three (3) other states require signatures of 10,000 or more for U.S. House candidates petitioning to get on the general election ballot (North Carolina, South Carolina and Georgia);

b.    the median number of signatures required for U.S. House candidates petitioning to get on the general election ballot in all 435 U.S. House Districts is 1,000, and the average is 3,179.

c.    in 2016, the 8,593 valid signatures the SOEB Hearing Examiner found Plaintiff Candidate Gill had filed would have gotten him on the ballot as an independent general election candidate in 385 or 88.5% of the 435 U.S. House Districts.

16

71.   Illinois is the only state that does not check to see if a candidate filed the requisite number of signatures and allows candidates on the ballot who file only one or sometimes no signatures, if no objection is filed; and only checks signatures if a voter files an objector's petition against a candidate.

72.   The foregoing shows the State of Illinois has no interest in keeping non-compliant candidates off the ballot.

73.   This too is a violation of equal protection because enforcement is totally haphazard, dependent on whether a voter in the relevant jurisdiction files an objector's petition.

74.   Our courts of review have held that ballot access history is an important factor in determining whether a ballot restriction impermissibly burdens freedom of political association and other constitutional rights.

75.   No candidate for the U.S. House in Illinois has ever overcome4 a general election signature requirement of 10,754 or more, and since 1890 only three (3) have done so in the entire country.

76.   The SOEB Hearing Examiner found Plaintiff Candidate filed 8, 593 valid signatures.

77.   Only one candidate for the U.S. House has ever overcome a general election signature requirement of 8,593 or more in Illinois, and that was H. Douglas Lassiter in the 15th Congressional District in 1974.

78.   Since 1890 in the U.S. only 12 candidates for the U.S. House have overcome a general election ballot signature requirement of 8,593 or more,

79.   There have been more than 25,000 U.S. House races since 1890.

80.   Thus, in only 0.048% of all U.S. House races since 1890 has a candidate overcome a

---

4 For Illinois"overcome" means the candidate overcame an objector's petition.

general election signature requirement of 8,593 or more (number of valid signatures Plaintiff candidate filed in this case).

81.    Thus, in only 0.012% of all U.S. House races since 1890 has a candidate overcome a general election ballot signature requirement of 10,754 or more (number of signatures Plaintiff Candidate was required to file instantly, pursuant to the Election Code).

82.    The foregoing facts describe the State's severe and overly burdensome restrictions on ballot access, which result in a violation of Plaintiffs' constitutional rights.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Issue a declaration that the 5%  minimum signature requirement of the Election Code, both facially and as applied, or alternatively only as applied, is unconstitutional, being inconsistent with the First and Fourteenth Amendments to the United States Constitution;

B.    Enter a preliminary injunction and permanent order enjoining Defendants from enforcing the 5%- minimum- signature requirement of the Election Code, as applied to Plaintiff Gill's nominating petition, and enjoining Defendants to direct that the name of Plaintiff David M. Gill, an independent candidate for Illinois' 13th Congressional District, be printed upon the November 8, 2016 General Election ballot;

C.    Award the Plaintiffs the reasonable costs and expenses of this action, including attorney fees pursuant to the Civil Rights Attorney's Fee and Award Act of 1976, 42 U.S.C. §1988; and

D.    Award such other and further relief as the Court deems just and equitable.

**COUNT IV**

**CUMULATIVELY, ILLINOIS' BALLOT ACCESS LAWS
VIOLATE THE U.S. CONSTITUTION'S FIRST AMENDMENT &
FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE**

83.   The Plaintiffs restate and incorporate the above paragraphs as if fully stated herein.

84.   The notarization requirement, the 5%-minimum-signature requirement, the 90-day signature-gathering period, and the splitting of population centers each constitutes a constitutionally impermissible barrier to the Plaintiffs' participation in the democratic process and violates the Plaintiffs' rights under the United States Constitution.

85.   However, even if this Court should find that each of these complained-of requirements is permissible when individually scrutinized, this Court should still find in the Plaintiffs' favor, based on the totality of the circumstances, including the failure of any independent or new party candidate for the U.S. House in Illinois ever to overcome a signature requirement as high as the instant one of 10,754.

86.   The complained-of requirements, when viewed in the totality of the circumstances, constitute a regimen or scheme imposed on the Plaintiffs by the Defendants to unconstitutionally limit ballot access to only two established political parties, *i.e.*, the "two party system."

87.   However, Defendants' obstructions notwithstanding, Illinois voters desire more, not fewer, choices on the ballot, and a majority of voters disapprove of the "two-party system."

88.   The disapproval of the "two-party system" was confirmed in Illinois at the Primary Election, on March 18, 2014, at which only 18% of registered Illinois voters declared themselves to be affiliated with the Democratic Party or the Republican Party.  This was the lowest voter turnout for a Primary Election since 1960.  Minutes of ISBE Meeting of April 8, 2014–Executive Director Borgsmiller presentation of canvass of official results for March 18, 2014, Primary Election.[5]

---

[5]   http://www.elections.il.gov/Downloads/AboutTheBoard/PDF/04_18_14Minutes.pdf, page last visited August 9, 2014.

89.   Taking into account the unusually high primary turnout in 2016 of 45.5% due to the hotly contested Presidential primaries in both established political parties, and averaging it in with the prior four primaries, still yields an average turnout of only 27.4%.

90.   A voter affiliates with a political party by participating in a Primary Election and declaring himself or herself to be affiliated with one or another of the established parties by completing a ballot application for that party.

91.   To illustrate, in a Primary Election, voters who request a Democratic Party ballot are deemed to be Democrats, and voters who request a Republican Party ballot are deemed to be Republicans.

92.   Accordingly, in Illinois, as of March 18, 2014, only 18% of registered voters are affiliated with the two currently established parties (or based on the average of the last four primaries: 27.4%).

93.   Accordingly, in Illinois, as of March 18, 2014, 82% of registered voters did not affiliate with either the Democratic Party or Republican Party (or average of last four primaries: 72.6%).

94.   Thus, through a phenomenon sometimes referred to as "voting with your feet," 82% (or 72.6%) of voters disapprove of the two-party system and its candidates and desire to see candidates on the ballot who are not affiliated with either established party.

95.   The ISBE's and SOEB's enforcement of the aforestated requirements of the Election Code, in the totality of the circumstances, impose heightened, severe, and excessive burdens upon the Plaintiffs, and their rights to Free Speech and Freedom of Association, that are not narrowly tailored and are not the least restrictive means to achieve the State's legitimate interests.

96.   The ISBE's and SOEB's enforcement of the aforestated requirements of the Election

Code, in their totality and cumulatively, on their face and as applied, violate the Plaintiffs' rights of Free Speech and Freedom of Association guaranteed by the United States Constitution's First Amendment and Fourteenth Amendment Equal Protection clause.

**WHEREFORE**, the Plaintiffs respectfully pray that this Court:

A. Issue a declaration that the cumulative effect of the Section 10-4 circulator notarization requirement, the 5%-minimum-signature requirement, the 90-day petitioning period, and the splitting of population centers, or any combination thereof, both facially and as applied to the Plaintiffs, is unconstitutional, being inconsistent with the First and Fourteenth Amendments to the United States Constitution;

B. Enter a preliminary injunction and permanent order enjoining Defendants from enforcing the aforestated provisions of the Election Code as applied to the Plaintiffs, and enjoining Defendants to direct that the name of the Plaintiff Candidate David M. Gill be printed upon the November 8, 2016 General Election ballot or, in the alternative, to afford the Plaintiff Candidate additional time in which to gather petition signatures from registered voters, in compensation for the undue burden imposed by the cumulative impact of the unconstitutional requirements;

C. Award the Plaintiffs the reasonable costs and expenses of this action, including attorneys' fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. §1988; and

D. Award such other and further relief as this Court deems just and equitable.

RESPECTFULLY SUBMITTED,

DAVID M. GILL, DAWN MOZINGO
DEBRA KUNKEL, LINDA R. GREEN
DON NECESSARY and GREG PARSONS

Samuel J. Cahnman
Attorney at Law
915 S. Second Street
Springfield, IL 62704
(217)528-0200
samcahnman@yahoo.com

BY: _____
        Samuel J. Cahnman
        Their Attorney