**E-FILED**
Thursday, 25 August, 2016  01:51:02 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID M. GILL, *et al.,* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 16-3221 |
| Vs | ) | |
| | ) | |
| CHARLES W SCHOLZ, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

NOW COMES the Plaintiffs, DAVID M GILL, DAWN MOZINGO, DEBRA KUNKEL, LINDA R. GREEN, DON NECESSARY and GREG PARSONS by and through their attorney, SAMUEL J. CAHNMAN, and for their Memorandum of Law In Support OF Their Motion For Temporary Restraining Order or Preliminary Injunction, State:

### INTRODUCTION

In the accompanying motion the plaintiffs moved pursuant to Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order (hereinafter: "TRO") or preliminary injunction prohibiting the Defendants from enforcing provisions of the Election Code challenged in the Plaintiffs' Complaint as being violative of the first and Fourteenth Amendments to the United States

Constitution, and enjoining the Defendants to print the name of Plaintiff DAVID

M. GILL upon the ballot for the November 8, 2016, General Election as an

independent candidate for Representative in the U.S. House of Representatives in

the 13th Congressional District.

FACTS

History of Illinois 5% Signature Requirement And Other Challenged Ballot Restrictions

Illinois' first signature requirement for independent candidates for

Representative in the U.S. House of Representatives was adopted in 1891 with

enactment of "An Act to provide for the printing and distribution of ballots at

public expense, and for the nomination of candidates for public offices, to

regulate the manner of holding elections, and to enforce the secrecy of the

ballot."  Laws 1891, p107

Section 5 of that Act provided that nominations of candidates for office within

any district or political division less than the State may be made by nomination

papers signed by 2% of those who voted in the prior general election in the

political division. That requirement also applied to candidates of new political

parties. (Richard Winger Affidavit attached as Exhibit "A", hereinafter: "Winger

Affidavit")

In 1927 the General Assembly amended the 1891 Act to allow new or minor

political parties to nominate candidates by convention or caucus meeting.

Laws, 1927, p.457, Sec.4.

Because so many Communist affiliated candidates used the 1927 law to get on

the ballot, the General Assembly in 1931 repealed the 1927 provision and hiked

the signature requirement to 5% for both minor-party and independent

candidates for offices elected from political subdivisions less than the State.

Laws, 1931, p.549 Secs. 4&5. (Winger Affidavit)[1]

The 1931 Act also for the first time imposed the requirement of a notarized

circulator's affidavit at the bottom of each petition page.

Laws, 1931 p.549, Sec. 5 ½

On February 1, 1984 Public Act 83-1055 for the first time restricted the time in

which circulators could collect signatures to the 90 days before the filing deadline.

Legislative Opponents called it a roadblock to ballot access and the sponsor said it

was designed to protect incumbents. (Il House Debates, 6/24/83, pp. 91-95,

Attached hereto as Exhibit "B")

<u>David Gill Candidacy</u>

Plaintiff DAVID M.GILL (hereinafter: "Gill")  ran as the Democratic candidate for the

U.S. House in the 13th Congressional District in 2012.  He received 136,032 votes, just 1,002  or

---

[1] Provisions prohibiting Communists from being a party on the ballot were enacted into the new Election Code in
1943 Laws 1943, p.9, Secs. 7-2 & 10-2

0.3% less than the winner. (See Exhibit "C" attached hereto)

Gill began collecting signatures for this independent run on the very first day he was allowed to by law, March 29, 2016. He cut back on his work and devoted any time he was not working, eating or sleeping between March 29, 2016 and June 27, 2016 to collecting signatures. He was joined by 18 other circulators and together they collected 11,348 Signatures. (Gill Affidavit attached hereto as Exhibit "D")

<u>ARGUMENT</u>

1.  To prevail on their motion, the Plaintiffs must satisfy a four-part test as follows: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The court performs a balancing test based on those four factors.

> The court, sitting as a chancellor in equity, then "weighs" all four factors in deciding whether to grant the injunction, seeking at all times to "minimize the costs of being mistaken". We call this process the "sliding scale" approach: the more likely it is that the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side.
> *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7[th]

Cir.1992)(internal citation omitted).

2.   Regarding the first element of the test, a party seeking a preliminary

injunction must demonstrate "a plausible claim on the merits," *Hoosier*

*Energy Rural Elec. Coop Inc. v John Hancock Life Ins. Co.*, 582 F.3d 721, 725

(7th Cir.2009), or stated differently, "that it has a better than negligible'

chance of success on the merits of at least one of its claims", *Girl Scouts*

*of Manitou Council , Inc v. Girl Scouts of U.*S.A., 549 F.3d 1079, 1096 (7th

Cir.2008). This is an "admittedly low requirement." Id. In this case, the

plaintiffs have high probability of prevailing on the merits.

3.   In determining that a 1%, 180 day statewide signature requirement for

presidential candidates was unconstitutional, the U.S. District Court for the

Northern District of Georgia concluded that

> "the burden on Plaintiffs' rights is so severe that Strict scrutiny applies.
> But even if strict scrutiny does not apply, the States' interest in regulating
> presidential elections is not sufficiently important to warrant the
> restrictions imposed." *Green Party of Georgia v. Kemp.*
> 2016 WL, 1057022, 19 (U.S. Dist. Ct., N.D. GA 2016)

4.   In determining whether a burden on ballot access is severe our U.S. Court

of Appeals For the Seventh Circuit has held that:

> "What is ultimately important is not the absolute or relative number
> of signatures required but whether a 'reasonably diligent candidate
> could be expected to be able to meet the requirements and gain
> a place on the ballot.
> *Bowe v. Bd. Of Election Comm'rs of City of Chicago*, 614 F.2d 1147,
> 1152 (7th Cir. 1980)(Citing *Storer*, 415 U.S. at 742)."

> *Stone v. Bd. Of Elections Comm'rs of City of Chicago*, 750 F.3d
> 678,682 (7th Cir 2014)

5.   In *Storer* the U.S. Supreme Court Stated:

> "Past experience will be a helpful,  if not always an unerring,
> guide: it will be one thing if independent candidates have
> qualified with some regularity and quite a different matter if
> they have not" *Storer v. Brown*, 415 U.S. 724, 742,
> 94 S.Ct. 1274, 1285 (1974)

6.   *Stone* held the Fact that 9 candidates met the 12,500 signature

requirement for mayor of Chicago meant the requirement was not severe.

7.   *Jones v. McGuffage*, 921 F. Supp 2d 888 893 (N.D. Ill 2013) noted that Mr.

Winger stated Illinois is the only state that allows a candidate who files less

than the required number of signatures to appear on the ballot if no

objector's petition is filed against their petition. Winger swore to the same.

His affidavit attached hereto as Exhibit "A"

8.   This is clearly confirmed by Exhibits "E", "F",G" and "H" attached hereto.

"E" is the Statement of Candidacy of Larry (Lawrence) Cohen to run for

President in the March 15, 2016 Illinois primary. "F" is the Objector's petition

filed against Cohen because he submitted no signatures. "G" is a withdrawal

of the objector's petition. "H" is a listing of that candidate's name on the

ballot March 15th, Showing that because the objector's petition was

withdrawn, Cohen's name appeared on the ballot even though he filed no

signatures.

9.    Also, in evaluating how frequently independent candidates for the U.S.

House got on the ballot in Illinois, redistricting years must be excluded. This

is because in the first election after redistricting (years ending in 2), Illinois

law sets a flat 5,000 signature requirement in all 18 Congressional Districts.

10 ILCS 5/10-2

10.    Thus, in evaluating the severity of the burden, we must only look at

independent or new (third) party candidate for the U.S. House, who made it

on the ballot in non-redistricting years when an objector's petition was filed

against them. Obviously, if a candidate for the U.S. House with a 10,000

signature requirement, files 1,000 signatures and makes it on the ballot

because no objector's petition was filed, that does not tell us anything about

how severe of a burden the 10,000 requirement is.

11.    Based on past experience it is clear that the signature requirement of

10,754 is extremely severe in that:

   a.    No U.S. House candidate in Illinois has ever overcame[2] a signature
         requirement of 10,754 since 1890 and only 3 have done so in the entire country.

   b.    Only one U.S. House Candidate in Illinois has ever overcome a signature
         requirement of 8,593 or more (number of valid signatures Gill was
         found to have) and that was 42 years ago.

12.    In *Lee v. Keith* the U.S. Court of Appeals for this Circuit struck down an

---

[2] For Illinois "overcame" means the Candidate overcame an objector's petition

excessive signature requirement for independent legislative candidates

because no one had met it from 1980 to 2006.

463 F.2d 763-771-2 (7th Cir 2006)

13.    Obviously, if no candidate has ever met the challenged requirement in

Illinois and only 3 have in the entire country since 1890, it is clear that even a

very reasonable diligent candidate could not be expected to be able to meet

the requirement and gain a place on the ballot.  Winger says this in his affidavit.

14.    The U.S. Supreme Court held in *Burdick v. Takushi*, 504 U.S. 428, 434,

112 S. Ct. 2059 (1992) that when rights protected by the 1st and 14th

Amendments are subjected to severe restrictions, such as is the case here,

the regulation must be narrowly drawn to advance a State interest of compelling

importance.

15.    Instantly, there is no reason and certainly no compelling reason to keep off the

ballot a candidate who filed 8,593 valid signatures, so that two candidates

from the same tired old two major parties, who had to each file about 740

signatures, can have the ballot all to themselves, and disenfranchise the

multitude of voters who are yearning for another alternative.

16.    Our U.S. Supreme Court has observed that interest in political stability

> "does not permit a State to completely insulate the two-party
> system from minor parties' or independent candidates'
> competition and influence." *Timmons v. Twin Cities Area New
> Party*, 520 U.S. 351, 366-87, 117 S. Ct. 1364 (1977)

17.   The legislative debate on the low restricting signature collecting to 90

days prior to filing was clearly designed to and does restrict ballot access.

Opposing the legislation, Rep. Jaffe said:

> "[I]f we can't beat them, it really should be shame on us. I don't
> see any necessity for…all these roadblocks in the way of people
> who want to run for office….it's contrary to the American way of
> life. (Il House Debate, 6/24/83, p.93 Ex "B")

Jaffe also noted the legislation would stop an individual who wanted to get all the
signatures himself if he couldn't do it in 90 days, and that:

> "We ought to realize that there are people out there…
> Who don't have a party organizations And we ought to
> permit them to run."*Id.*

Rep. Harris said the legislation would limit,

> "access to the ballot, which may be fine for… incumbents, but I
> don't think that's what our system is all about. Competition is
> not going to hurt any of us."
> (Il House Debate, 6/24/83, p.93 Ex "B")

18.   Courts are required to evaluate ballot access restrictions together and

assess their combined effect on voters' and candidates' political association

rights. *Lee*, 463 Fed. 3d at 770 and *Nader v. Keith*, 385 F.3d 729, 735 (7th Cir.

2004)

19.   Clearly, the combined effect of the 10,754 requirement squashed into 90

days kept Gill off the ballot.

20.  Gill's circulators collected an average of 95.47 signatures a day. At that

rate in 23 more days they would have obtained 10,754.

21.  The legislature's passage of the 90-day law produced *its* intended effect,   X

Killing Gill's independent candidacy.

22.  Thus, if the 5% requirement was constitutional when enacted, it certainly

became unconstitutional when the legislature severely hampered

independents' ability to collect the massive number of signatures required.   X

It is noteworthy that the last U.S. House candidate to gather as many

signatures as Gill, did so in 1974 before the 90 day law was enacted.

## THE LIKELIHOOD OF IRREPARABLE HARM
## IN THE ABSENCE OF INJUNCTIVE RELIEF

23.  The Plaintiffs can easily satisfy the second element of the test for

preliminary injunctive relief, because it has long been settled that the loss of

First Amendment rights "unquestionably constitutes irreparable injury,"

Elrod v. Burns, 427 U.S. 347,373 (1976).

24.  The denial of a place on the ballot in an election that is imminent

constitutes irreparable harm to the candidate, *and* his or her prospective voters.   X

The moment of opportunity to campaign for and win election to this public

office is transitory and cannot be re-created at a later date. In a similar case involving a

motion for preliminary injunctive relief filed by petitioners

seeking to have their candidate placed on the ballot, the United States

District Court for the Northern District of Illinois agreed, noting, "[E]ven the

temporary deprivation of First Amendment rights constitutes irreparable

harm in an injunction suit." *Johnson v. Cook County Officers Electoral Bd.*,

680 F. Supp. 1229, 1232 (N.D. Ill. 1998), citing *Citizens for a Better*

*Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir.1975)

## THE BALANCE OF EQUITIES FAVORS THE PLAINTIFFS

25.    Under the "balance of equities" part of the test, the court considers "the

irreparable harm the nonmovant will suffer if preliminary relief is granted,

balanced against the irreparable harm to the movant if relief is denied."

Stewart v. Taylor,104F.3d 965, 968 (7th Cir. 1997)

26.    As in *Johnson*, the impact on the Defendants, as members of the State

Board of Elections, or sitting as the State Officers Electoral Board, is

negligible.

## A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

27.    Finally, with respect to the public interest prong, again the Plaintiffs refer

to the reasoning of the Northern District in *Johnso*n:"[T]here would be no

harm to the public interest of issuing the injunction and thereby compelling

the Board to place [Plaintiff's] name on the ballot." Johnson, 680 F. Supp. at

1233.

28.   On the other hand, the public does *not* have an interest in seeing qualified

persons kept off the ballot:"[I]f this court determines that plaintiffs'

constitutional rights may have been infringed, the public interest, if anything,

supports granting the preliminary relief which plaintiffs now seek." Id.

WHEREFORE, the Plaintiffs pray for their Motion For Temporary Restraining Order or

Preliminary Injunction to be granted.

> Respectfully submitted,
>
> David M. Gill, Dawn Mozingo, Debra Kunkel,
> Linda R. Green, Don Necessary and Greg Parsons,
> Plaintiffs
> By:_____ /s Samuel J. Cahnman
>        SAMUEL J. CAHNMAN
>        Attorney for Plaintiffs

SAMUEL J. CAHNMAN
Attorney at Law
915 S. Second St.
Springfield, IL 62704
217-528-0200
samcahnman@yahoo.com

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the following persons by emailing and enclosing same in an envelope addressed as indicated with postage fully prepaid and by depositing same in the U.S. Post Office Mail Box on the 18th day of August, 2016.

Thomas A. Ioppola
Assistant Attorney General
State Of Illinois
100 West Randolph Street
13th Floor
Chicago, IL 60601-3218
tioppolo@atg.state.il.us

_____ /s Samuel J.Cahnman